1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

TIMOTHY WILLIAM BROWN,           )     No. C 12-0362 RMW (PR)
                                 )
            Petitioner,          )     ORDER DENYING PETITION FOR
                                 )     WRIT OF HABEAS CORPUS;
    v.                           )     DENYING CERTIFICATE OF
                                 )     APPEALABILITY
ANTHONY HEDGPETH, Warden,        )
                                 )
            Respondent.          )
_____)

16

17          Petitioner, a state prisoner proceeding pro se, filed an amended petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  The court ordered respondent to show cause why

19   the petition should not be granted.  Respondent has filed an answer addressing the merits of the

20   petition, and petitioner has filed a traverse.  Having reviewed the briefs and the underlying

21   record, the court concludes that petitioner is not entitled to relief based on the claims presented

22   and DENIES the petition.

23                            **PROCEDURAL BACKGROUND**

24          Petitioner was charged and convicted by a jury of first degree murder.  The jury found

25   true an enhancement for use of a knife as a deadly weapon, and special circumstances for

26   commission of the offense in the course of a rape and kidnapping.  On October 31, 2008, the trial

27   court sentenced petitioner to a term of life without the possibility of parole plus one-year in state

28

1  prison.  On June 22, 2010, the California Court of Appeal affirmed.  On September 1, 2010, the

2  California Supreme Court denied a petition for review.  On November 22, 2010, petitioner filed

3  a petition for writ of certiorari with the United States Supreme Court which was denied on

4  March 31, 2011.  Petitioner filed several unsuccessful state habeas petitions in each level of the

5  California state courts.  Petitioner filed the instant federal habeas petition on February 14, 2013.

6  **FACTUAL BACKGROUND**

7      On Sunday, January 14, 1979, the victim, Virginia Correa, and her friend, Lina Martinez,

8  went to a local club to sing in a Mariachi contest.  *People v. Brown*, No. H033608, 2010 WL

9  2505626, at *1 (Cal. App. June 22, 2010).  Afterward, the victim and Martinez drove to another

10  Mariachi bar called Blocker's.  *Id.*  They left sometime around midnight.  *Id.*  They drove to a

11  store to buy cigarettes, but could not find a store that was open, so drove back to Blocker's.  *Id.*

12  Martinez went inside Blocker's and returned with only two cigarettes.  *Id.*  The victim

13  complained that two were not enough and said that she would buy more cigarettes after she

14  dropped off Martinez.  *Id.*  Martinez never saw the victim again, and the victim never returned

15  home.  *Id.* at *1-*2.  That night, the victim's fiancé, Jesse Vera, went to the victim's house to see

16  her because he had been out of town for the weekend.  *Id.* at *2.  The victim's son answered the

17  door and said that she was not home.  *Id.*  The following day, the victim's sister heard on the

18  news that an unidentified body had been found that morning in the Sierra hills of San Jose.  *Id.*

19      The victim's body was found on January 15, 1979.  *Id.* at *1.  She had been stabbed

20  seven times in the abdomen, with some of the wounds extending through her body to the back.

21  *Id.*  She also had bruises on her face, arm, thighs, knees, ankles, and hands.  *Id.*  Her clothes were

22  askew but intact and she had a large deposit of semen in her vaginal cavity.  *Id.*  The autopsy

23  findings concluded that her death occurred between 1:00 and 2:00 a.m., and that she had engaged

24  in sexual intercourse within a short time of her death.  *Id.*

25      The victim's car was found in east San Jose one mile from an address on Capitola

26  Avenue at which petitioner had previously reported to a government agency that his father had

27  resided.  *Id.* at *2.  The driver's seat of the car was pushed back although the victim normally

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Brown362hcfinal.wpd

1    drove with the seat all the way forward.  *Id.*  Inside the car, the police found the car keys, 21

2    cigarette butts (17 of which were Salem brand, which was the kind the victim liked to smoke) in

3    the ashtray, an unopened box of Marlboro cigarettes, and a gold bracelet.  *Id.* at *1-*2.

4         In 2002, the victim's daughter learned that a new law regarding DNA testing had been

5    passed.  *Id.* at *2.  She called the police to ask if DNA evidence existed in her mother's case that

6    could be used to identify the killer.  *Id.*  Although the vaginal semen sample could not be

7    located, police did submit the cigarette butts, pantyhose and underwear for DNA analysis.  *Id.*  A

8    "cold hit" linked petitioner's DNA to the semen found on the victim's pantyhose and to one of

9    the cigarettes found in the ashtray of the victim's car.  *Id.*  DNA from two unknown male donors

10   was also found on two of the cigarettes.  *Id.*

11        At trial, Danette A., the daughter of petitioner's former girlfriend, testified that she was

12   born in 1979.  *Id.* at *3.  One night, when she was 16 years old, petitioner made her ride in the

13   car with him while he visited several of his friends.  *Id.*  Petitioner made Danette A. drink so

14   much liquor that she threw up, and then she smoked marijuana until she passed out.  *Id.*  At some

15   point during the night, she woke up feeling paralyzed but was aware that one of her pant legs

16   was off and something was touching her thigh as well as penetrating her vagina.  *Id.*  Petitioner

17   was the only person that she heard the whole time, and at one point, petitioner told her to put her

18   clothes on.  *Id.*  Danette A. then proceeded to pass out again.  *Id.*  When she woke up again, it

19   was morning, and she was alone in the car.  *Id.*  She felt sore, her belt was undone, and her

20   underwear was twisted to the side.  *Id.*  She found petitioner visiting with friends at a house

21   across the street from where the car was parked, and they drove home.  *Id.*  Danette A. did not

22   confront petitioner.  Petitioner was later tried and acquitted of the rape charge that arose from

23   this incident.  *Id.*

24        Petitioner did not testify at trial, nor did he call any witnesses.  *Id.*  The defense theory

25   was that petitioner may have had consensual sex with the victim after she dropped of Martinez,

26   but that the prosecution failed to prove beyond a reasonable doubt that the victim was not killed

27   by an unknown assailant or assailants after she had sex with petitioner.  *Id.*

28

**DISCUSSION**

A.    <u>Standard of Review</u>

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, <u>Williams v. Taylor</u>, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the

evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

B.    Petitioner's Claims

As grounds for federal habeas relief, petitioner claims: (1) petitioner's due process rights and the Ex Post Facto Clause were violated by the State's failure to preserve the vaginal semen sample evidence, and the trial court's allowance of the State to use the destroyed evidence at trial;[1] (2) petitioner's prosecution was brought outside the statute of limitations, violating the principles in Stogner v. California, 539 U.S. 607 (2003); (3) introduction of uncharged offenses violated petitioner's due process rights and the Ex Post Facto Clause; (4) the jury instructions regarding the uncharged offenses violated petitioner's due process rights; (5) trial counsel rendered ineffective assistance; (6) the prosecution failed to establish a proper "chain of custody" for evidence; (7) the trial court's denial of petitioner's discovery request and exclusion of evidence of third party culpability violated petitioner's right to present a defense and/or right to due process; (8) appellate counsel rendered ineffective assistance of counsel; (9) the evidence was insufficient to convict petitioner of murder and the personal use of a weapon; (10) the exclusion of testimony from petitioner's preliminary hearing violated his right to present a defense and/or right to due process; (11) the prosecution violated Griffin v. California, 380 U.S. 609 (1965); (12) the prosecution committed misconduct by mischaracterizing the definition of "reasonable doubt"; and (13) cumulative errors rendered the trial fundamentally unfair.

1.    Failure to preserve vaginal semen sample evidence

At trial, petitioner moved to dismiss or impose sanctions on the state for its failure to preserve a vaginal semen sample that petitioner alleges was exculpatory.  Petitioner argues that

---

[1] The court has combined petitioner's Claims 1 and 3 together.

1    at the time of the crime, the standard for evaluating whether the prosecution had violated a

2    defendant's right to due process was when there existed a "reasonable possibility" that the

3    evidence would have been material and favorable to the defendants.  See People v. Hitch, 12 Cal.

4    3d 641, 649-50 (1974).  If there was a reasonable possibility that the evidence was exculpatory,

5    then case law under Hitch provided that the criminal defendant could receive sanctions.  See id.

6    at 652.  After Hitch, however, the United States Supreme Court issued California v. Trombetta,

7    467 U.S. 479, 489 (1984), which set forth a different standard than the state.  Specifically,

8    Trombetta stated that in order for a defendant to receive relief on the basis that the state

9    destroyed evidence, the "evidence must both possess an exculpatory value that was apparent

10   before the evidence was destroyed, and be of such a nature that the defendant would be unable to

11   obtain comparable evidence by other reasonably available means."  Id. at 488-89.  Petitioner

12   argues that Hitch was the applicable standard, and because the state court did not apply Hitch,

13   the Ex Post Facto Clause and petitioner's right to due process were violated.

14       Petitioner raised this issue at trial, and also in his state habeas petitions.  The California

15   Superior Court, in denying petitioner's state habeas petition, rejected this claim because

16   petitioner failed to raise the claim on appeal.  (Resp. Ex. 11 at 16.)  Alternatively, the Superior

17   Court denied the claim on the merits.  It concluded that defendants in criminal trials are subject

18   to procedural rules in effect at the time of trial, rather than at the time the crime was committed.

19   (Id. at 16-17.)  Because Trombetta was procedural in nature (rather than substantive), it was

20   applicable to petitioner's trial even though it did not issue until after the time of the crime.  (Id.

21   at 17.)

22       The U.S. Constitution prohibits the federal government and the states from passing any

23   "ex post facto Law."  U.S. Const., Art. I, § 9, cl. 3 (federal government); Art. I, § 10, cl. 1

24   (states).  These clauses prohibit the government from enacting laws with certain retroactive

25   effects: any law that (1) makes an act done before the passing of the law, which was innocent

26   when done, criminal; (2) aggravates a crime or makes it greater than it was when it was

27   committed; (3) changes the punishment and inflicts a greater punishment for the crime than the

28

1  punishment authorized by law when the crime was committed; or (4) alters the legal rules of

2  evidence and requires less or different testimony to convict the defendant than was required at

3  the time the crime was committed.  See Stogner v. California, 539 U.S. 607, 611-12 (2003)

4  (citing Calder v. Bull, 3 Dall. 386 (1798)).

5      None of the "new" laws to which petitioner cites produces any of these effects.  The

6  Superior Court's rejection of petitioner's contention that the failure to use Hitch violated the Ex

7  Post Facto Clause was reasonable.

8      In addition, petitioner argues that the failure of the state to preserve the vaginal semen

9  sample evidence violated his right to due process.  The government has a duty to preserve

10  material evidence, i.e., evidence whose exculpatory value was apparent before it was destroyed

11  and that is of such a nature that the defendant cannot obtain comparable evidence by other

12  reasonably available means.  See Trombetta, 467 U.S. at 489.  Although the good or bad faith of

13  the police is irrelevant to the analysis when the police destroy material exculpatory evidence, the

14  analysis is different if the evidence is only potentially useful; that is, there is no due process

15  violation unless there is bad faith conduct by the police in failing to preserve potentially useful

16  evidence.  Illinois v. Fisher, 540 U.S. 544, 547-48 (2004); Arizona v. Youngblood, 488 U.S. 51,

17  58 (1988).

18      Here, the trial court noted that because the vaginal semen sample evidence was not

19  preserved, it was never tested, and thus it was not determined whether the missing evidence

20  would have been exculpatory.  (Resp. Ex. 2, RT 895-96.)  After a hearing, and after having

21  determined that there was no evidence of bad faith by law enforcement, the trial court concluded

22  that there was not a sufficient showing of bad faith, and denied the motion.

23      Petitioner points to no evidence and makes no argument that the police or prosecution

24  acted in bad faith.  Negligent failure to preserve potentially useful evidence is not enough to

25  establish bad faith and does not constitute a violation of due process.  See Grisby v. Blodgett,

26  130 F.3d 365, 371 (9th Cir. 1997).  Without any evidence of bad faith, petitioner cannot succeed

27  on this claim.

28

1   Accordingly, the state court's rejection of petitioner's claim was not contrary to or an

2   unreasonable application of clearly established Supreme Court law.

3        2.      Statute of limitations

4        Petitioner claims that the charges of rape and kidnapping were barred by the six-year and

5   eight-year statute of limitations period as prescribed by California Penal Code §§ 804 and 805.

6   Petitioner further argues that the prosecution for rape and kidnapping was barred under Stogner

7   v. California, 539 U.S. 607 (2003).  See Stogner, 539 U.S. at 611-12 (prohibiting the government

8   from enacting "ex post facto" law that: (1) makes an act done before the passing of the law,

9   which was innocent when done, criminal; (2) aggravates a crime or makes it greater than it was

10  when it was committed; (3) changes the punishment and inflicts a greater punishment for the

11  crime than the punishment authorized by law when the crime was committed; or (4) alters the

12  legal rules of evidence and requires less or different testimony to convict the defendant than was

13  required at the time the crime was committed).

14       However, as respondent points out, petitioner was not charged with, nor convicted of, the

15  substantive crime of rape or kidnapping.  Rather, petitioner's sentence for first degree murder

16  was enhanced by the jury's subsequent findings that the killing had taken place during the

17  commission of rape and kidnapping.  Moreover, because a charge of murder with special

18  circumstances has no statute of limitations period, see Cal. Penal Code § 799; People v.

19  Vasquez, 118 Cal. App. 4th 501, 505 (2004), petitioner is not entitled to federal habeas relief on

20  this claim.  Finally, to the extent petitioner attempts to rely on Stogner, that case is inapplicable

21  here.  See Stogner, 539 U.S. at 633 (holding that "a law enacted after expiration of a previously

22  applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a

23  previously time-barred prosecution.").

24       Accordingly, the state court's rejection of petitioner's claim was not contrary to or an

25  unreasonable application of clearly established Supreme Court law.

26       3.      Admission of uncharged offense

27       Petitioner claims that the admission of the testimony of Danette A. under California

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Brown362hcfinal.wpd

1  Evidence Rule § 1108 violated his right to due process.  Petitioner argues that the uncharged

2  crime against Danette A., and the facts of the underlying charge of murder were not similar

3  enough to be relevant, and that the testimony would confuse the jurors because petitioner was

4  acquitted of the crime against Danette A.

5          "Simple errors of state law do not warrant federal habeas relief."  Holley v. Yarborough,

6  568 F.3d 1091, 1101 (9th Cir. 2009).  "[F]ailure to comply with the state's rules of evidence is

7  neither a necessary nor a sufficient basis for granting habeas relief."  Jammal v. Van de Kamp,

8  926 F.2d 918, 920 (9th Cir. 1991).  The improper admission of evidence will only provide a

9  basis for habeas relief if "'it rendered the trial fundamentally unfair in violation of due process.'"

10  Holley, 568 F.3d at 1101.  "Only if there are no permissible inferences the jury may draw from

11  the evidence can its admission violate due process."  Jammal, 926 F.2d at 920 (emphasis

12  omitted).

13          Here, even assuming that the evidence admitted by the court was purely propensity

14  evidence and was not relevant to any other issue, AEDPA precludes federal habeas relief

15  because the United States Supreme Court has expressly left open the question of whether the

16  admission of propensity evidence violates due process.  See Estelle v. McGuire, 502 U.S. at 62,

17  75 n.5 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process

18  Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged

19  crime."); see also Mejia v. Garcia, 534 F.3d 1036, 1047 (9th Cir. 2008) ("[T]he United States

20  Supreme Court has never established the principle that introduction of evidence of uncharged

21  offenses necessarily must offend due process.").  Because the Supreme Court has elected to

22  leave this an open issue, a trial court's decision to admit propensity evidence does not violate

23  clearly established federal law as determined by the Supreme Court.  See Mejia, 534 F.3d at

24  1046.

25          To the extent petitioner argues that the use of California Evidence Rule § 1108 violates

26  the Ex Post Facto Clause, this claim has already been foreclosed by the Ninth Circuit.  See

27  Schroeder v. Tilton, 493 F.3d 1083, 1088 (9th Cir. 2007) (relying on Supreme Court case law to

28

1   reject the claim that the application of California Evidence Rule § 1108 violated the Ex Post

2   Facto Clause and explaining that "the retroactive application of certain evidentiary rules to

3   certain defendants might well be disadvantageous to those defendants . . . . [But] . . . they do not

4   implicate the same kind of unfairness implicated by changes in rules setting forth a sufficiency of

5   the evidence standard.").

6       Accordingly, the state court's rejection of this claim was not contrary to, or an

7   unreasonable application of, clearly established Federal law, as determined by the Supreme

8   Court.

9       4.   Jury instruction regarding uncharged offense

10      Petitioner takes issue with the instructions given regarding the uncharged offense.

11  Specifically, petitioner argues that the language used in CALCRIM Nos. 1191,[2] 1102,[3] and 1047

12  were prejudicial and persuaded the jury that petitioner had committed a crime against Danette

13  A., when in fact, he had been acquitted.

14      To obtain federal collateral relief for errors in the jury charge, a petitioner must show that

15  "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates

16  due process.'" Estelle, 502 U.S. at 71-72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

17  The instructions may not be judged in artificial isolation, but must be considered in the context

18  of the instructions as a whole and the trial record.  Id.  Petitioner also must show actual prejudice

19  from the error, i.e., that the error had a substantial and injurious effect or influence in

20  determining the jury's verdict, before the court may grant federal habeas relief.  Calderon v.

21  Coleman, 525 U.S. 141, 146 (1998) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

22  _____

23      [2] CALCRIM No. 1191 instructs the jury that while evidence of an uncharged sex offense

24  was not charged in this case, the jury can consider the evidence "only if the People have proved
    by a preponderance of the evidence that the defendant in fact committed the uncharged offense."

25  If the jury determines that the defendant committed the uncharged offense, the jury is permitted,
    but not required, to conclude from that evidence that the defendant was disposed to commit

26  sexual offenses.

27      [3] CALCRIM Nos. 1102 and 1047 define the elements of sexual penetration with a person

28  under 18, and sexual penetration of an intoxicated person.

1    As an initial matter, the court notes that petitioner does not argue that the instructions as

2    given were incorrect under state law, but that the instructions should not have been given just as

3    evidence of the uncharged offense should not have been introduced.  CALCRIM No. 1191

4    clearly instructs the jury that even if the jury found by a preponderance of the evidence that

5    petitioner committed prior sexual offenses, that finding was insufficient by itself to prove beyond

6    a reasonable doubt that petitioner committed the charge offense of murder.  See, e.g., Schultz v.

7    Tilton, 659 F.3d 941, 944 (9th Cir. 2011) (approving of the revised version of the jury instruction

8    regarding uncharged sex offenses).  Moreover, the jury was also informed that petitioner had

9    already been acquitted of that prior offense against Danette A., and that preponderance of the

10   evidence is a different and lower standard than beyond a reasonable doubt.  As the instructions

11   read overall, the court cannot say that, in light of the overall jury instructions, that these

12   instructions, which correctly stated the law, so infected the entire trial that the resulting

13   conviction violates due process.  See Estelle, 502 U.S. at 72.

14       Given the high deference accorded to the state court, the state court's rejection of this

15   claim was not contrary to, or an unreasonable application of, clearly established Supreme Court

16   law.

17       5.    Ineffective assistance of counsel

18       Petitioner alleges that he did not receive the effective assistance of counsel because: (1)

19   the 30-year delay in bringing charges against petitioner resulted in prejudice; (2) counsel failed

20   to bring a diminished capacity defense; (3) counsel failed to investigate or provide petitioner

21   with a competent psychiatrist to conduct an examination on petitioner; (4) counsel filed Brady

22   and Hitch motions after trial rather than before trial and failed to file pre-trial "writs"; (5)

23   counsel failed to ensure petitioner's presence at all hearings; (6) counsel failed to object to and

24   inquire about the influence a potential juror had on the other jurors; and (7) counsel failed to

25   object to the lack of black jurors in the jury.

26       A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth

27   Amendment right to counsel, which guarantees not only assistance, but effective assistance of

28

1  counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  In order to prevail on a Sixth

2  Amendment ineffectiveness of counsel claim, petitioner must establish two things.  First, he

3  must establish that counsel's performance was deficient, i.e., that it fell below an "objective

4  standard of reasonableness" under prevailing professional norms.  Id. at 687-88.  Second, he

5  must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a

6  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

7  would have been different."  Id. at 694.  A reasonable probability is a probability sufficient to

8  undermine confidence in the outcome.  Id.

9      The Strickland framework for analyzing ineffective assistance of counsel claims is

10  considered to be "clearly established Federal law, as determined by the Supreme Court of the

11  United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  See Cullen v. Pinholster, 131 S.

12  Ct. 1388, 1403 (2011).  A "doubly" deferential judicial review is appropriate in analyzing

13  ineffective assistance of counsel claims under § 2254.  See id. at 1410-11.  The general rule of

14  Strickland, i.e., to review a defense counsel's effectiveness with great deference, gives the state

15  courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower

16  range of decisions that are objectively unreasonable under AEDPA."  Cheney v. Washington,

17  614 F.3d 987, 995 (9th Cir. 2010) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

18  When § 2254(d) applies, "the question is not whether counsel's actions were reasonable.  The

19  question is whether there is any reasonable argument that counsel satisfied Strickland's

20  deferential standard."  Harrington v. Richter, 131 S. Ct. 770, 788 (2011).

21                              A.    Pre-indictment delay

22      Petitioner argues that in defense counsel's motion to dismiss for pre-indictment delay,

23  defense counsel informed the court that he would not be able to effectively represent petitioner

24  in light of the loss of evidence, including the loss of potentially exculpatory evidence.

25      Petitioner does not point to any specific instances of how counsel's performance fell

26  below an objective standard of reasonableness in light of the information that counsel had

27  available.  Moreover, even assuming that counsel's performance was deficient, petitioner has not

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Brown362hcfinal.wpd

1   explained how he was prejudiced from this deficiency.  Even in defense counsel's motion to

2   dismiss for pre-indictment delay, counsel's complaints amounted to nothing more than

3   speculation that additional investigation would lead to exculpatory or helpful information.  (Pet.

4   at 64-65; Ex. F.)  Cf. United States v. Corona-Verbera, 509 F.3d 1105, 1112-14 (9th Cir. 2007)

5   (finding no actual or non-speculative prejudice to support due process violation for pre-

6   indictment delay when indictment was brought within the statute of limitations, and defendant

7   failed to make a specific showing as to what lost evidence would have provided).

8               B.     Diminished capacity defense and failure to pursue psychiatric examination

9        Petitioner claims that prior to trial, petitioner told counsel that petitioner did not

10  remember the victim at all, and did not remember killing anyone.  Petitioner had also told

11  counsel that at the time of the murder, petitioner drank and abused drugs quite a bit, and would

12  often times black out, act out of character, and get into fights.  Petitioner also informed counsel

13  that on the night of the murder, petitioner was drinking and had taken drugs, but did not

14  remember anything that happened.  Petitioner further suggested that the only viable defense he

15  had was a "diminished capacity defense."

16      The Superior Court rejected this claim in petitioner's state habeas petition.  The Superior

17  Court reasoned that counsel's decision to pursue a complete innocence theory rather than a

18  diminished capacity theory was not unreasonable.  (Resp. Ex. 11 at 7.)  Counsel further could

19  have reasonably believed that because so much time had passed between the murder and the

20  trial, neither petitioner nor any of the defense witnesses could have been able to testify truthfully

21  and accurately about whether petitioner was in fact drunk on the night the victim was killed.  (Id.

22  at 8.)  As such, the testimony would not have been useful or strong support for a diminished

23  capacity defense.  (Id.)

24      Here, the relevant inquiry is not what defense counsel could have done, but rather

25  whether the choices made by defense counsel were reasonable.  See Babbitt v. Calderon, 151

26  F.3d 1170, 1173 (9th Cir. 1998).  Judicial scrutiny of counsel's performance must be highly

27  deferential, and a court must indulge a strong presumption that counsel's conduct falls within the

28

1    wide range of reasonable professional assistance.  See Strickland, 466 U.S. at 689.  "Although

2    courts may not indulge 'post hoc rationalizations' for counsel's decisionmaking that contradicts

3    the available evidence of counsel's actions, . . . neither may they insist counsel confirm every

4    aspect of the strategic basis for his or her actions.  There is a 'strong presumption' that counsel's

5    attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer

6    neglect.'"  Harrington v. Richter, 131 S. Ct. 770, 790 (2011) (citations omitted); see also id. at

7    791 ("an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for

8    failing to prepare for what appear to be remote possibilities"); Cullen v. Pinholster, 131 S. Ct.

9    1388, 1407 (2011) ("a trial court 'must indulge [the] strong presumption' that counsel made all

10   significant decisions in the exercise of reasonable professional judgment.").

11        Here, petitioner sets forth two theories that are in conflict with each other.  First, he says

12   that he does not remember anything about the victim.  Next, and alternatively, he states that if he

13   did kill the victim he does not remember doing so because he was not in his right mind.  Counsel

14   reasonably could have determined that he could not present evidence of complete innocence as

15   well as evidence of diminished capacity, and thus counsel was forced to choose one path over

16   the other.  The court cannot say that choosing the complete innocence theory was unreasonable

17   under these facts.  In addition, petitioner claims that even though defense counsel received

18   permission to have petitioner evaluated by a competent psychiatrist, counsel failed to do so.

19   (Pet., Ex. H.)

20        Even assuming that the failure to pursue a diminished capacity defense and proceed with

21   a psychiatric examination was deficient performance, petitioner has not demonstrated prejudice.

22   As the Superior Court noted, it was likely that petitioner and his witnesses would not have been

23   able to testify truthfully or accurately about petitioner's state of mind at the time of the murder

24   because it had occurred so long ago.  Moreover, there is no evidence that a psychiatric

25   examination would shed any light – positive or negative – about petitioner's mental state on the

26   night of the murder.  The failure to investigate a mental health defense is not deficient unless the

27   petitioner can show that counsel had reason to know that petitioner's mental health might be

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Brown362hcfinal.wpd

1   impaired.  Hoffman v. Arave, 455 F.3d 926, 932 (9th Cir. 2006), judgment vacated in part on

2   other grounds by Arave v. Hoffman, 552 U.S. 117 (2008) (per curiam).  In addition, where the

3   petitioner cannot demonstrate that he suffered from a mental illness, but rather argues that such

4   additional investigation might have warranted helpful information, petitioner does not satisfy the

5   prejudice prong of Strickland.  See, e.g., Gonzales v. Knowles, 515 F.3d 1006, 1015-16 (9th

6   2008) (where mental illness seemed unlikely, no evidentiary hearing required where petitioner

7   could only speculate that if tests had been done and if they showed some brain damage, it might

8   have resulted in a lower sentence if counsel had presented the evidence).

9                    C.    Timing of Brady / Hitch motions and pre-trial writs

10          Petitioner claims that counsel waited until after the jury had already heard evidence about

11  the missing slides of the vaginal semen sample and potential exculpatory evidence to file a

12  motion to exclude such evidence, sanction the prosecution for failing to preserve such evidence,

13  and argue a Hitch motion.  However, the record clearly demonstrates that defense counsel in fact

14  did raise these issues prior to trial.  (Resp. Ex. 2, RT 100-03.)  Accordingly, petitioner is not

15  entitled to relief on this claim.

16          Relatedly, petitioner argues that counsel promised that he would file a writ of mandamus

17  if the trial court denied petitioner's motion to suppress.  However, counsel later told petitioner

18  that in fact he could not file a writ, but that petitioner's only remaining avenue was to file an

19  appeal.  A difference of opinion as to trial tactics does not constitute denial of effective

20  assistance, see United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981), and tactical decisions

21  are not ineffective assistance simply because in retrospect better tactics are known to have been

22  available.  See Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1984).  Here, counsel clearly

23  considered filing a writ prior to the conclusion of trial, but believed that the more appropriate

24  path was to file an appeal instead.  Petitioner has set forth no argument to explain why this

25  decision was unreasonable.  Moreover, petitioner does not provide any argument as to how he

26  was prejudiced by this decision to file an appeal rather than a pre-trial writ.  Accordingly,

27  petitioner is not entitled to relief on this claim.

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Brown362hcfinal.wpd

D.    Presence at all hearings

Petitioner claims that he did not waive his right to be present when the parties were choosing jury instructions and petitioner was not present during the deposition of Sgt. Meeker, one of the original investigating officers.

The Supreme Court has recognized that "the right to personal presence at all critical stages of the trial . . . [is a] fundamental right[] of each criminal defendant." Rushen v. Spain, 464 U.S. 114, 117 (1983).  This right derives from the Confrontation Clause of the Sixth Amendment and the Due Process Clauses of the Fifth and Fourteenth Amendments. Campbell v. Wood, 18 F.3d 662, 671 (9th Cir. 1994) (en banc).

The record shows that petitioner in fact was present for jury instruction selection.  (Resp. Ex. 2, RT 764-74.)  In addition, as respondent points out, defense counsel stipulated to the introduction of a video of Sgt. Meeker taken at Sgt. Meeker's house because he was too ill to attend court.  (Resp. Ex. 1, CT 894-929.)  Because the statements being admitted were out-of-court statements, and defense counsel had the opportunity for cross-examination, there is no Confrontation Clause violation.  Crawford v. Washington, 541 U.S. 36, 59 (2004).

Additionally, even assuming that petitioner's absence from the interview with Sgt. Meeker was a constitutional violation, there is no evidence that petitioner's absence had a substantial or injurious effect on the jury's verdict.  The relevant inquiry is "whether there has been any interference with the defendant's opportunity for effective cross-examination," or whether the defendant's presence "would have contributed to [his] opportunity to defend himself against the charges." Kentucky v. Stincer, 482 U.S. 730, 744 n.17, (1987).  Again, while petitioner mentions questions that he would have liked to ask Sgt. Meeker, the potential evidence gathered from Sgt. Meeker is speculative at best.  Accordingly, petitioner has not demonstrated prejudice.

E.    Juror inquiry

According to petitioner, during jury selection, one of the jurors admitted to the court that she had known a member of the victim's family and could not be unbiased as a juror.  Petitioner

1  argues that counsel should have investigated and inquired into whether the other jurors were

2  influenced by this excused juror's relationship.

3       The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on

4  the evidence presented at trial.  See Turner v. Louisiana, 379 U.S. 466, 472-73 (1965).  Jury

5  exposure to extrinsic evidence deprives a defendant of the rights to confrontation, cross-

6  examination and assistance of counsel embodied in the Sixth Amendment.  See Lawson v. Borg,

7  60 F.3d 608, 612 (9th Cir. 1995).  A petitioner is entitled to habeas relief only if it can be

8  established that the exposure to extrinsic evidence had "'substantial and injurious effect or

9  influence in determining the jury's verdict.'" Sassounian v. Roe, 230 F.3d 1097, 1108 (9th Cir.

10  2000) (quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).

11       Here, petitioner presents nothing but speculation to support his claim.  This is insufficient

12  to sustain a claim of ineffective assistance of counsel.  Petitioner presents no evidence to

13  demonstrate that counsel's failure to investigate fell below an objective reasonable standard, or

14  that such a failure resulted in prejudice.  Accordingly, petitioner is not entitled to relief on this

15  claim.

16            G.    Absence of black jurors

17       Petitioner claims that counsel should have brought to the trial court's attention that the

18  trial court excused all of the black people on the jury for hardship, thus violating petitioner's

19  right to have a jury that represents a fair cross-section of the community.  Petitioner further

20  argues that counsel should have brought a Wheeler/Batson challenge.

21       As an initial matter, petitioner conflates two separate claims.

22       First, a criminal defendant has a constitutional right stemming from the Sixth

23  Amendment to a fair and impartial jury pool composed of a cross section of the community.  See

24  Holland v. Illinois, 493 U.S. 474, 476 (1990).  The fair cross section requirement applies only to

25  the larger jury pool or venire and is not applicable to petit juries. See Lockhart v. McCree, 476

26  U.S. 162, 173-74 (1986).  In Duren v. Missouri, 439 U.S. 357, 364 (1979), the Supreme Court

27  held that to establish a prima facie violation of the fair cross-section requirement, a defendant

28

1    must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community;

2    (2) that the representation of this group in venires from which juries are selected is not fair and

3    reasonable in relation to the number of such persons in the community; and (3) that this

4    underrepresentation is due to systematic exclusion of the group in the jury-selection process."

5    Petitioner provides no evidence to support factors 2 and 3.  Moreover, from petitioner's own

6    statements, it is clear that there were potential black jurors present in the larger jury pool, but the

7    court released them based on hardship.  Thus, petitioner cannot sustain a claim that counsel was

8    ineffective for failing to challenge the notion that petitioner was denied a fair and impartial jury

9    pool composed or a cross section of his community.

10         Second, the use of peremptory challenges by either the prosecution or defendant to

11   exclude cognizable groups from a petit jury may violate the Equal Protection Clause.  See

12   Georgia v. McCollum, 505 U.S. 42, 55-56 (1992).   The Supreme Court first held that the Equal

13   Protection Clause forbids the challenging of potential jurors solely on account of their race, see

14   Batson v. Kentucky, 476 U.S. 79, 89 (1986).  However, here, petitioner is arguing that the court

15   excused the potential black jurors on the basis of hardship.  Petitioner is not challenging the

16   prosecution's decisions to exercise his peremptory challenges against any particular race.  Thus,

17   petitioner's claim against counsel for failing to raise a Wheeler/Batson motion is inapplicable.

18         Accordingly, the state court's rejection of petitioner's ineffective assistance claims are

19   not contrary to, or an unreasonable application of, clearly established Supreme Court law.

20              6.    Chain of custody

21         Petitioner alleges that all the evidence that had been in the possession of the state

22   including the subsequently lost or destroyed had not been kept in a proper "chain of custody"

23   and thus violated petitioner's right to due process.  Petitioner appears to claim that because the

24   vaginal semen sample was missing, and was stored with the other DNA evidence, such as the

25   victim's clothing, none of the DNA evidence should have been admitted.

26         As an initial matter, petitioner's contention that the admission of the available DNA

27   evidence violated his due process rights does not entitle him to habeas relief because there are no

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Brown362hcfinal.wpd

1  controlling Supreme Court decisions holding that the admission of evidence based on an

2  inadequate chain of custody violates due process.  Holley, 568 F.3d at 1101 ("The Supreme

3  Court ... has not yet made a clear ruling that admission of irrelevant or overtly prejudicial

4  evidence constitutes a due process violation sufficient to warrant issuance of the writ.").  As

5  such, there is no clearly established Supreme Court law directly addressing this issue, and

6  therefore the state court's decision on this issue cannot be contrary to, or an unreasonable

7  application of, federal law.  See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008).

8      Moreover, a state court's evidentiary ruling is not subject to federal habeas review unless

9  the ruling violates federal law, either by infringing upon a specific federal constitutional or

10 statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by

11 due process.  See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal, 926 F.2d at 919-20.  Failure

12 to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting

13 federal habeas relief on due process grounds.  See Henry v. Kernan, 197 F.3d 1021, 1031 (9th

14 Cir. 1999).  The due process inquiry in federal habeas review is whether the admission of

15 evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  Walters

16 v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).  Even if an evidentiary error is of constitutional

17 dimension, the court must consider whether the error was prejudicial under Brecht v.

18 Abrahamson, 507 U.S. 619 (1993).

19      Even assuming the claim is reviewable as a federal claim, habeas relief is not warranted

20 because there were permissible inferences for the jury to draw from the evidence admitted, and

21 the evidence did not render petitioner's trial fundamentally unfair.  See Jammal, 926 F.2d at 920

22 ("Only if there are no permissible inferences the jury may draw from the evidence can its

23 admission violate due process.  Even then, the evidence must 'be of such quality as necessarily

24 prevents a fair trial.'").  Despite any possible glitch in the chain of custody, the jury could

25 permissibly infer that petitioner's DNA was found on the victim's pantyhose as well as one of

26 the cigarette butts.

27     Relatedly, petitioner also argues that the prosecution violated Brady v. Maryland, 373

28

1   U.S. 83 (1963), by failing to turn over evidence of the slide case which held the vaginal semen

2   sample, and the syringe, which contained evidence taken from the victim.  In Brady, the

3   Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused

4   upon request violates due process where the evidence is material either to guilt or to punishment,

5   irrespective of the good faith or bad faith of the prosecution."  Id. at 87.  For a Brady claim to

6   succeed, a petitioner must show: (1) that the evidence at issue is favorable to the accused, either

7   because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution, either

8   willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice ensued).

9   Banks v. Dretke, 540 U.S. 668, 691 (2004).

10      Here, because neither the vaginal semen sample nor the syringe were ever tested for

11  DNA because they had been lost or destroyed, petitioner cannot demonstrate that the evidence

12  was either favorable to him, or that it was material.

13          7.   Right to present a defense

14      Petitioner argues that he was denied his right to present a defense when the trial court

15  denied his discovery motion to have limited access to the state's DNA database, and also when

16  the trial court excluded petitioner's evidence of third party culpability.

17      The constitutional right to present a complete defense includes the right to present

18  evidence, including the testimony of witnesses.  See Washington v. Texas, 388 U.S. 14, 19

19  (1967).  But the right is only implicated when the evidence the defendant seeks to admit is

20  "relevant and material, and . . . vital to the defense."  Id. at 16.  "Only rarely" has the Supreme

21  Court held that the right to present a complete defense was violated by the exclusion of defense

22  evidence under a state rule of evidence.  Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013).

23          A.   Discovery motion

24      Prior to trial, defense counsel moved to compel the discovery of limited access to the

25  CODIS[4] database so that an expert could run an empirical experiment to determine if the

26  _____

27      [4] "CODIS is the acronym for the "Combined DNA Index System" and is the generic
    term used to describe the FBI's program of support for criminal justice DNA databases as well

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Brown362hcfinal.wpd

1   Random Match Probability method made sense in "cold-hit" cases such as this one.  Specifically,

2   defense counsel wished to conduct a comparative analysis of individuals in the CODIS database

3   to determine how many others, shared the same genetic profile as petitioner.  The trial court

4   denied the motion, apparently on the basis that, as defense counsel conceded, state statutes

5   prohibit general access to the CODIS database with the exception of his own client's records.  In

6   addition, the prosecutor argued that allowing defense counsel to access the database would

7   violate privacy rights of those individuals in the database, and that the prosecution had already

8   disclosed the most relevant information to defense counsel to impact a jury's confidence in the

9   results of a random match through the Random Match Probability method.  Specifically, the

10  prosecution provided defense counsel with the number of offenders in the database when the first

11  law enforcement search occurred to match petitioner's DNA.

12          However, the California courts have already concluded that the "database match

13  probability" statistic sought by defense counsel, while relevant, does not change the rarity of a

14  perpetrator's genetic make-up.  See People v. Xiong, 215 Cal. App. 5th 1259, 1276 (2013).

15  Stated another way, "[w]hen a suspect is located by whatever means, the frequency and

16  probability of the perpetrator's profile remain the same."  Id. at 1274.  The database match

17  probability would give the probability of a match from the CODIS database, and depending on

18  the results, could have been helpful to petitioner to influence the jury's decision on how much

19  weight to give the statistical probability of a match.

20          Nonetheless, this court finds that the state court's denial of petitioner's discovery motion

21  was reasonable.  As petitioner conceded, access to the CODIS database was prohibited by state

22  law.  There is no indication that such a law was arbitrary or without reason.  Moreover, even

23  without access to the CODIS database, defense counsel was able to cross-examine the

24  prosecution's witnesses about the possibility of other methods of statistical analysis, the potential

25  _____

26  as the software used to run these databases.  The National DNA Index System or NDIS is
    considered one part of CODIS, the national level, containing the DNA profiles contributed by
27  federal, state, and local participating forensic laboratories."  People v. Xiong, 215 Cal. App. 4th
    1259, 1267 n.4 (2013).

28

1   flaws used in petitioner's methods,  and argued that the jury should not give as much weight to

2   the DNA analysis.  Thus, the denial of petitioner's discovery motion did not have a substantial or

3   injurious effect on the jury's verdict.

4                          B.       Third party culpability

5           Prior to trial, the prosecution moved to exclude evidence of third party culpability with

6   respect to a man named Sonny Strickland.  Petitioner wanted to include evidence that

7   approximately six months after the victim was killed, Sonny Strickland was at several bars in

8   downtown San Jose, encountered a woman, Marilyn Weimer, and offered to drive her home.

9   (Resp. Ex. 2, RT 67.)  Instead of taking her home, however, he drove around and then took her

10  up to the rural foothills overlooking that valley where the victim's body was found six months

11  earlier.  (Id.)  He stopped the car about two miles away from where the victim's body was found.

12  (Id.)  A police officer happened upon the car, shone his flashlight into the car, and saw what

13  appeared to be a woman being raped.  (Id.)  The woman ran out of the car screaming for help,

14  and a hunting knife was found on the floor of the car.  (Id.)  Petitioner argued that the close

15  temporal relationship, the same geographical location, and the similarity of facts that both

16  victims were kidnapped after meeting an unknown man at a downtown San Jose bar were

17  sufficient circumstantial evidence to present a third party culpability defense.  (Id. at 67-69.)

18          The trial court granted the prosecution's motion to exclude the evidence regarding Sonny

19  Strickland.  (Id. at 71.)  It found that there was not a sufficient nexus because, as California's

20  case law had stated, evidence, motive, and opportunity were not sufficient by themselves to

21  permit evidence of third party culpability.  (Id.)  In addition, the trial court went on to state that

22  there was no evidence that Sonny Strickland had any connection with the victim, or with the

23  events that occurred the night the victim was killed.  (Id.)

24          Evidence of potential third party culpability must be admitted when, under the "facts and

25  circumstances" of the individual case, its exclusion would deprive the defendant of a fair trial.

26  Chambers v. Mississippi, 410 U.S. 284, 302-03 (1973).  However, it is also well-established that

27  trial judges may exclude evidence "if its probative value is outweighed by certain other factors

28

1   such as unfair prejudice, confusion of the issues, or potential to mislead the jury."  Holmes v.

2   South Carolina, 547 U.S. 319, 327 (2006).  "A specific application of this principle is found in

3   rules regulating the admission of evidence proffered by criminal defendants to show that

4   someone else committed the crime with which they are charged.  See, e.g., 41 C.J.S., Homicide §

5   216, pp. 56-58 (1991) ("Evidence tending to show the commission by another person of the

6   crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable

7   doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote

8   and lack such connection with the crime that they are excluded"); 40A Am. Jur. 2d, Homicide §

9   286, pp. 136-138 (1999) ("[T]he accused may introduce any legal evidence tending to prove that

10  another person may have committed the crime with which the defendant is charged . . . . [Such

11  evidence] may be excluded where it does not sufficiently connect the other person to the crime,

12  as, for example, where the evidence is speculative or remote, or does not tend to prove or

13  disprove a material fact in issue at the defendant's trial" (footnotes omitted))."  Id.

14       Here, as the trial court noted, there was no evidence even circumstantially linking Sonny

15  Strickland to the underlying crime.  Because the third party culpability evidence was speculative

16  and did not sufficiently connect Sonny Strickland to the crime, the trial court's exclusion of such

17  evidence was reasonable.

18       Accordingly, the state court's conclusion was not contrary to or an unreasonable

19  application of clearly established Supreme Court law.

20       8.    Insufficient evidence

21       Petitioner argues that there was insufficient evidence to convict him of the murder and

22  the use of a knife.  Specifically, petitioner states that the DNA evidence produced at trial showed

23  that three men had contact with the victim on the night of the murder.  However, no murder

24  weapon was ever found, nor was there evidence that petitioner ever owned or carried a knife.

25  Petitioner argues that the evidence merely demonstrated that petitioner had sex with the victim at

26  some point, but not that petitioner killed the victim or used a knife to do so.

27       A federal court reviewing collaterally a state court conviction does not determine whether

28

1   it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982

2   F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the

3   evidence in the light most favorable to the prosecution, any rational trier of fact could have

4   found the essential elements of the crime beyond a reasonable doubt.'"  Id. (quoting Jackson v.

5   Virginia, 443 U.S. 307, 319 (1979)).  Only if no rational trier of fact could have found proof of

6   guilt beyond a reasonable doubt, has there been a due process violation.  Jackson, 443 U.S. at

7   324; Payne, 982 F.2d at 338.  Sufficiency claims on federal habeas review are subject to a

8   "twice-deferential standard."  Parker v. Matthews, 132 S. Ct. at 2152 (2012) (per curiam).  First,

9   relief must be denied if, viewing the evidence in the light most favorable to the prosecution,

10  there was evidence on which "any rational trier of fact could have found the essential elements

11  of the crime beyond a reasonable doubt."  Id. (quoting Jackson, 443 U.S. at 324).  Second, a state

12  court decision denying a sufficiency challenge may not be overturned on federal habeas unless

13  the decision was "objectively unreasonable."  Id. (quoting Cavazos v. Smith, 132 S. Ct. 2, 4

14  (2011)).

15          Here, the defense theory was that the victim had consensual sex with petitioner at some

16  point during the night, and that someone else murdered the victim.  However, the evidence

17  showed that the victim only ever associated with Mexicans or Mexican-Americans and petitioner

18  was not Mexican or Mexican-American.  The evidence also showed that the victim was engaged

19  and spoke about her wedding plans with Martinez approximately an hour before she was

20  murdered.  Moreover, the autopsy findings indicated that the victim had sex while she was lying

21  down, and within a short time of her death.  Specifically, the pathologist believed that the time

22  between the sexual assault and the stabbing was only a few minutes, and the sexual activity

23  occurred first and then the stabbing occurred while the victim was still lying down.  Despite the

24  possibility that petitioner had consensual sex with the victim, and then someone else may have

25  come along later and sexually assaulted and killed her, a federal habeas court "must presume –

26  even if it does not affirmatively appear in the record – that the trier of fact resolved any such

27  conflicts in favor of the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at

28

1  326.  In other words, in order to obtain federal habeas relief on this claim, petitioner must

2  demonstrate that the state courts' denial of relief with respect to his insufficiency of the evidence

3  arguments was an objectively unreasonable application of the decision in <u>Jackson</u> to the facts of

4  this case.  Petitioner has failed to overcome the deference due to the state court's findings of fact.

5  Accordingly, petitioner is not entitled to federal habeas relief on his insufficiency of the

6  evidence claim.

7  9.  Exclusion of testimony from preliminary hearing

8  Petitioner argues that at the preliminary hearing, criminalist Nancy Marte testified that

9  the evidence bag which contained the now missing slide of the victim's vaginal semen sample

10  was empty, and the microscope slide case was also empty.  However, according to petitioner, the

11  testimony that the microscope slide case was empty was subsequently deleted from the

12  transcript.  In addition, Marte's testimony about the actual contents inside the bag marked

13  "exhibit seven" had also been deleted.  Further, petitioner claims that the coroner, Dr. Mason,

14  testified at the preliminary hearing that he looked at the smaller bag located within exhibit seven

15  and its contents, made a remark about the empty slide case, as well as the other missing samples,

16  however, those portions of Dr. Mason's testimony had also been deleted from the transcript.

17  Finally, petitioner argues that portions of criminalist Cordelia Willis' testimony about the items

18  missing from the "exhibit seven" bag were also deleted.  Petitioner alleges that the deleted

19  portions of the preliminary hearing transcript deprived petitioner of the opportunity to impeach

20  or cross-examine these witnesses.

21  Again, the constitutional right to present a complete defense includes the right to present

22  evidence, including the testimony of witnesses.  See <u>Washington v. Texas</u>, 388 U.S. 14, 19

23  (1967).  But the right is only implicated when the evidence the defendant seeks to admit is

24  "relevant and material, and . . . vital to the defense."  <u>Id.</u> at 16.  Additionally, a violation of the

25  right to present a defense does not occur any time such evidence is excluded, but rather only

26  when its exclusion is "arbitrary or disproportionate to the purposes [the exclusionary rule applied

27  is] designed to serve."  <u>Holmes</u>, 547 U.S. at 324 (internal citation and quotation marks omitted).

28

1    In addition, a court violates the Confrontation Clause only when it prevents a defendant from

2    examining a particular and relevant topic.  Fenenbock v. Director of Corrections, 692 F.3d 910,

3    919 (9th Cir. 2012).  A petitioner meets his burden of showing a Confrontation Clause violation

4    by showing that "[a] reasonable jury might have received a significantly different impression of

5    [a witness'] credibility . . . had counsel been permitted to pursue his proposed line of cross-

6    examination."  Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986); Slovik v. Yates, 556 F.3d

7    747, 753 (9th Cir. 2009).  The focus of this inquiry "must be on the particular witness, not on the

8    outcome of the entire trial," Van Arsdall, 475 U.S. at 680, such that defense counsel's ability to

9    impeach other witnesses "is irrelevant" to whether the trial court violated the Confrontation

10   Clause, Slovik, 556 F.3d at 754-55.

11          The Superior Court denied petitioner's claim that preliminary hearing testimonies had

12   been altered to delete mention of the missing pieces of evidence because the review of the

13   preliminary hearing transcript did not support petitioner's claims.  (Resp. Ex. 11 at 18-19.)

14   Further, the Superior Court concluded that, pursuant to state law, claims relating to a preliminary

15   hearing were moot once a defendant receives his trial.  (Id. at 19.)

16          Here, even assuming a constitutional error, petitioner has not demonstrated that the error

17   had a substantial or injurious effect on the jury's verdict.  Defense counsel was able to point out

18   to the jury that the chain of custody procedures were not as well-settled at the time the evidence

19   was seized as they are now, and also asked the jury to question why and how the vaginal semen

20   sample containing a large amount of sperm was lost.  (Resp. Ex. 2, RT 843, 851-52.)  Defense

21   counsel stressed that because this case was based largely on forensic DNA evidence, the fact that

22   the vaginal semen sample sample had been lost was significant in being able to determine who

23   had sex with the victim moments before her death.  (Id.)  Thus, the jury knew about the missing

24   pieces of evidence and defense counsel capitalized on those missing pieces.  Accordingly,

25   because a showing of constitutional error under the Sixth Amendment only merits habeas relief

26   if the error was not harmless, that is, if it had a "'substantial and injurious effect or influence in

27   determining the jury's verdict,'" Holley v. Yarborough, 568 F.3d 1091, 1100 (9th Cir. 2009)

28

1   (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)), even assuming that portions of the

2   preliminary hearing testimonies had been deleted, petitioner is not entitled to habeas relief.

3           10.     Griffin error

4           Petitioner argues that during closing argument, the prosecutor improperly commented on

5   petitioner's failure to testify.  The California Court of Appeal summarized the events as follows:

> After defense counsel had given his summation, the prosecutor responded in
> argument by discussing defense counsel's argument that, so far as the evidence
> showed, defendant could have had consensual sex with Virginia Correa and that
> an unknown assailant or assailants could have come upon her and killed her.
> The prosecutor stated "That particular version, there's absolutely zero, zero
> evidence that any of that ever happened. . . . *The only possibility is because the*
> *defense said it, but the defense did not take the witness stand and testify*."
> (Italics added.)  Defense counsel interjected: "Objection, Your Honor.  Griffin."
> The court immediately stated: "I will sustain the objection.  Don't refer to the
> defense testifying."  The prosecutor responded: "Okay."  Defense counsel then
> requested an admonishment.  The court admonished the jury: "The jury will
> disregard the last remark."  The prosecutor then clarified: "The defense attorney
> mentioned it, no other evidence of it, and that's not even evidence.  [¶]  Let me
> address some other points. . . ."  The trial court denied defendant's motion for
> mistrial.

14  Brown, 2010 WL 2505626, at *6.

15          The California Court of Appeals then rejected petitioner's claim both on the merits and

16  based upon harmless error.

> Griffin error occurs "whenever the prosecutor . . . comments, either directly or
> indirectly, upon defendant's failure to testify in his defense."  (People v.
> Medina (1995) 11 Cal.4th 694, 755.)  Here, the prosecutor's comment did not,
> in our view, "impliedly invite[] the jury to consider [the defendant's] failure to
> testify as *proof* that his actions were criminal."  (People v. Guzman (2000) 80
> Cal. App. 4th 1282, 1288, italics added.)  However, we agree with defendant
> that by drawing the jury's attention to the defendant's failure to testify, the
> prosecutor's argument could have led some jurors to draw adverse inferences
> from defendant's assertion of his Fifth Amendment privilege, even though, as
> the Attorney General points out, the court had already instructed the jury not to
> do so in CALCRIM 355.  Thus, even though in the context of the prosecutor's
> entire argument, it is equally possible that the jury understood the prosecutor's
> comments to mean only that defense counsel did not testify, and his argument
> was not evidence, we conclude that the trial court was correct to sustain the
> defense objection and admonish the jury because the prosecutor's comment
> was an improper, if indirect, comment on the defendant's right to remain silent
> at trial, in contravention of the principles set forth in Griffin v. California,
> supra, 380 U.S. 609.

> In our view, however, the error here was harmless beyond a reasonable doubt.
> (Chapman v. California (1967) 386 U.S. 18.)  Unlike People v. Guzman, supra,

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Brown362hcfinal.wpd

1   80 Cal. App. 4th 1282, 1290, where the Court of Appeal found the <u>Griffin</u> error
2   there reversible because the prosecutor's comments on the defendant's failure
    to testify were "relentless" and the jury's split verdict indicated that the jury
3   had doubts about the testimony with which the defendant's silence was
    contrasted, in this case the comment was brief, the court's reprimand was swift
4   and unequivocal, and the prosecutor's contrition evident to the jury ("Okay").
    On the contrary, this case more closely resembles <u>People v. Brasure</u> (2008) 42
5   Cal.4th 1037, where the comment was brief, ambiguous about to whom it
    referred, and subject to an immediate and unequivocal admonishment.  There,
6   our Supreme Court found the <u>Griffin</u> error harmless beyond a reasonable
    doubt.  (<u>Id.</u> at p. 1060.)

7   Furthermore, in this case, the DNA and propensity evidence, in combination
8   with the autopsy findings, the pathologist's testimony, and the evidence
    concerning the car, strongly refuted the inference that Virginia Correa engaged
9   in a consensual sexual encounter with defendant, or that there was enough time
    between the sexual assault and the stabbing, for defendant to get away and
10  leave the victim to the mercy of an unknown assassin.  Because there was
    simply no evidence to support such a scenario, the prosecutor's comment did
11  not "serve to fill an evidentiary gap in the prosecution's case," or "at least
    touch a live nerve in the defense, . . ."  (<u>People v. Vargas</u> (1973) 9 Cal.3d 470,
12  481.)  We conclude the comments "could have had no significant impact upon
    the jurors and were harmless beyond a reasonable doubt."  (<u>Ibid.</u>)

13  <u>Brown</u>, 2010 WL 2505626, at *7-*8.

14      Where a prosecutor on his own initiative asks the jury to draw an adverse inference from

15  a defendant's silence, or to treat the defendant's silence as substantive evidence of guilt, the

16  defendant's privilege against compulsory self-incrimination is violated.  <u>See</u> <u>Griffin v.</u>

17  <u>California</u>, 380 U.S. 609, 615 (1965).  However, such commentary by the prosecutor requires

18  reversal only if "(1) the commentary is extensive; (2) an inference of guilt from silence is

19  stressed to the jury as a basis for the conviction; and (3) where there is evidence that could have

20  supported acquittal."  <u>Jeffries v. Blodgett</u>, 5 F.3d 1180, 1192 (9th Cir. 1993) (citation omitted).

21      The facts in this case are similar to those in <u>Guam v. Ojeda</u>, 758 F.2d 403, 407 (9th Cir.

22  1985).  In <u>Ojeda</u>, the prosecutor also made an indirect statement that the defendant did not testify

23  by stating that the defense put on no witnesses to validate the theory of defense.  There, the

24  prosecutor stated, "[i]n light of that it is very difficult to believe that [the defendant] didn't know

25  what was going on that day. There has been no testimony that he found out that the jewelry in

26  that bag, the jewelry from those boys – he did anything other than go along with it."  <u>Id.</u>  The

27  Ninth Circuit concluded that, "taken in context, does not evidence an intent to violate

28

petitioner's fifth amendment privilege.  The prosecutor merely commented on the general lack of testimony supporting defendant's side of the story," which the prosecutor is permitted to do.  Id. In addition, the Ninth Circuit stated, "where alleged prosecutorial misconduct is limited to a single isolated statement, did not stress an inference of guilt from silence as a basis of conviction, and was followed by curative instructions, it is harmless beyond a reasonable doubt."

Similarly here, the prosecutor stated, "That particular version, there's absolutely zero, zero evidence that any of that ever happened. . . .  The only possibility is because the defense said it, but the defense did not take the witness stand and testify."  This comment was a general comment on the lack of testimony supporting petitioner's theory of defense, was "limited to a single isolated statement, did not stress an inference of guilt from silence as a basis of conviction, and was followed by curative instructions."  Id.

Accordingly, the state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

11.   Characterization of the definition of "reasonable doubt"

Petitioner claims that the prosecutor's characterization of "reasonable doubt" during closing argument was improper.  During closing argument, the following occurred:

> [Prosecutor]:  Proof beyond a reasonable doubt.  That's my burden of proof and I accept it fully.  I want you to hold me to it completely, but don't make it more than what it is. It's not proof beyond a shadow of a doubt. . .. [¶] . . .  It's not a mathematical rule, it's not a physical science type rule.  If it was, we would have drawn one up and told you here's the formula.  *It's a social science rule made up by people to use in everyday life.*  (Italics added.)

> [Defense Counsel]: Objection.  Misinstructing the jury as to the law, beyond a reasonable doubt.  This is not everyday life.

> [The Court]:  Ladies and Gentlemen, I've instructed you on the law.  The attorneys will endeavor to interpret that, but you should follow my instructions. If there are any differences between my instructions and the attorneys' remarks, you should follow my instructions.

> [Prosecutor]:  Bottom line, the words repeat themselves.  Reasonable and unreasonable, accept or reject, the point I am trying to make, this is what we do in everyday life, we do the same thing every day.  Just because you come through the courtroom doors, that doesn't mean you step through a looking glass and the world changes.  It's the same.  It's the same burden we use if you got a traffic ticket to whether you're accused of murder.

1
2
3
4
5

> After the prosecutor concluded his remarks, and before defense counsel gave his summation, the court reinstructed the jury on reasonable doubt, prefacing the instruction by stating: "Ladies and Gentlemen, during the course of the People's argument this morning, the defense attorney made an objection. It's not at all uncommon for attorneys to make objections during the course of argument; however, the defense attorney's point is an important point, and it concerned the interpretation by the prosecutor in his argument on the definition of reasonable doubt. [¶] I instructed you to follow my instructions on the law. Just to reemphasize my definition of reasonable doubt and so it's fresh in your minds, let me repeat a portion of that instruction.

6
7

Brown, 2010 WL 2505626, at *6-*7.

8
9

The California Court of Appeal rejected petitioner's claim of prosecutorial misconduct on the basis that any error was harmless. Id. at *8-*9.

10
11
12
13

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Id.. Under Darden, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005) (citing Darden v. Wainwright, 477 U.S. 168 (1986)).

14
15
16
17
18
19
20
21
22
23

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. In re Winship, 397 U.S. 358, 364 (1970). The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. See Victor v. Nebraska, 511 U.S. 1, 6 (1994). So long as the trial court instructs the jury on the necessity that defendant's guilt be proven beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. See id. at 5.

24
25
26
27

Here, one factor in determining misconduct amounted to a violation of due process is whether the trial court issued a curative instruction. When a curative instruction is issued, a court presumes that the jury has disregarded inadmissible evidence and that no due process violation occurred. See Greer v. Miller, 483 U.S. 756, 766 n.8 (1987). Here, as the California

28

1    Court of Appeal stated, there is no indication that the jury was misled into applying a lesser

2    reasonable doubt standard.  The trial court admonished the jury just before defense counsel's

3    closing statements that it should not use the prosecutor's reasonable doubt interpretation if it

4    found that the interpretation conflicted with the court's instruction on reasonable doubt.  The

5    court then immediately re-instructed the jury on reasonable doubt.  Then, the court twice

6    reminded the jury that the instructions as given by the court override any conflicting statements

7    made by counsel during opening and closing arguments.  Accordingly, even assuming the

8    prosecutor's interpretation of reasonable doubt was inaccurate, it did not rise to the level of a

9    constitutional violation.

10       Accordingly, the state court's rejection of this claim was not contrary to, or an

11   unreasonable application of, clearly established Supreme Court law.

12       12.    Ineffective assistance of appellate counsel

13       Petitioner claims that appellate counsel rendered ineffective assistance by failing to raise

14   all the claims petitioner has raised in this federal petition.  Appellate counsel does not have a

15   constitutional duty to raise every nonfrivolous issue requested by defendant.  See Jones v.

16   Barnes, 463 U.S. 745, 751-54 (1983).  The weeding out of weaker issues is widely recognized as

17   one of the hallmarks of effective appellate advocacy.  See Miller v. Keeney, 882 F.2d 1428, 1434

18   (9th Cir. 1989).  Appellate counsel therefore will frequently remain above an objective standard

19   of competence and have caused his client no prejudice for the same reason: because he declined

20   to raise a weak issue.  Id.

21       With respect to petitioner's claim that appellate counsel was ineffective for failing raise

22   claims of ineffective assistance of trial counsel, to determine whether appellate counsel's failure

23   to raise a claim of ineffective assistance of trial counsel was objectively unreasonable and

24   prejudicial, the district court must first assess the merits of the underlying claim that trial counsel

25   provided constitutionally deficient performance.  Moormann v. Ryan, 628 F.3d 1102, 1106-07

26   (9th Cir. 2010).  If trial counsel's performance was not objectively unreasonable or did not

27   prejudice the petitioner, then appellate counsel did not act unreasonably in failing to raise a

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Brown362hcfinal.wpd

1   meritless claim of ineffective assistance of counsel, and the petitioner was not prejudiced by

2   appellate counsel's omission.  Id.  Here, as explained previously, the court has concluded that

3   trial counsel did not render ineffective assistance of counsel.  With respect to the remaining

4   claims, the court has also discussed them on the merits, *supra*, and have found them unavailing.

5   Because raising these claims on appeal would have been unsuccessful, appellate counsel was not

6   ineffective in choosing not to do so.

7       Accordingly, the state court's rejection of this claim was not contrary to, or an

8   unreasonable application of clearly established Supreme Court law.

9       13.   Cumulative errors

10      In some cases, although no single trial error is sufficiently prejudicial to warrant reversal,

11  the cumulative effect of several errors may still prejudice a defendant so much that the

12  conviction must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003)

13  (reversing conviction where multiple constitutional errors hindered defendant's efforts to

14  challenge every important element of proof offered by prosecution).  Cumulative error is more

15  likely to be found prejudicial when the government's case is weak.  See id.  However, where, as

16  here, there is no single constitutional error existing, nothing can accumulate to the level of a

17  constitutional violation.  See Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011); see also United

18  States v. Solorio, 669 F.3d 943, 956 (9th Cir. 2012) (recognizing that there can be no cumulative

19  error when there has not been more than one error).

20                    **CONCLUSION**

21      The petition for a writ of habeas corpus is DENIED.

22      The federal rules governing habeas cases brought by state prisoners require a district

23  court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its

24  ruling.  Petitioner has failed to make a substantial showing that his claims amounted to a denial

25  of his constitutional rights, or demonstrate that a reasonable jurist would find the denial of his

26  claims debatable or wrong.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Accordingly, a COA

27  is DENIED.

28

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Brown362hcfinal.wpd

The clerk shall terminate all pending motions, enter judgment, and close the file.

IT IS SO ORDERED.

DATED: _____

RONALD M. WHYTE
United States District Judge

Order Denying Petition for Writ of Habeas Corpus; Denying Certificate of Appealability
P:\PRO-SE\RMW\HC.12\Brown362hcfinal.wpd

33

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY WILLIAM BROWN,

                Plaintiff,

   v.

ANTHONY HEDGPATH et al,

                Defendant.

_____/

Case Number: CV12-00362 RMW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 11, 2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Timothy William Brown G-38339
Salinas Valley State Prison
A4-129-L
P.O. Box 1050
Soledad, CA 93960-1050

Dated: August 11, 2015

                                      Richard W. Wieking, Clerk
                                      By: Jackie Lynn Garcia, Deputy Clerk